**E-FILED**
Thursday, 07 June, 2007  12:53:02 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RICHARD LOGSDON and BRIENNE LOGSDON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 05-1242 |
| DENNISON CORP., d/b/a BOB DENNISON AUTO CENTER, | ) ) ) ) | |
| Defendant. | ) | |

# O R D E R

This matter is now before the Court on Cross Motions for Summary Judgment.  For the reasons set forth below, Plaintiff's Motion [#48] is DENIED, and Defendant's Motion [#51] is GRANTED.

### FACTUAL BACKGROUND

Plaintiffs Richard and Brienne Logsdon came to Defendant Dennison's dealership in Bloomington, Illinois, to purchase an automobile on July 18, 2005.  They initially sought to purchase and finance a 2000 Ford Explorer Eddie Bauer Edition, and Mr. Logsdon provided Dennison with the information necessary to complete an application for financing.  Mrs. Logsdon also signed a completed Ford Credit Application.  They understood that their credit reports would be accessed as part of the effort to obtain financing.

Different lenders have different credit qualification requirements.  It is therefore Dennison's practice to obtain customer credit reports with the customer's permission so that it can rule out those lenders with whom they would not be qualified for credit.  Ultimately, the Logsdons were not able to qualify for financing for the Ford Explorer Eddie

Bauer Edition.  They then sought to obtain financing for a 2002 Ford Explorer XLT, and a credit application was subsequently approved through CitiFinancial.  On July 21, 2005, a Retail Installment Sales Contract ("RISC") was prepared for the purchase, with Mr. Logsdon's grandfather co-signing.  The Logsdon's were given an allowance of $1,200.00 for their trade-in Oldsmobile Achieva and were to make a $200 down payment.  That day, the Logsdons delivered their trade-in and made the down payment, and Dennison delivered the Explorer XLT to them.  Mr. Logsdon applied to have the license plates from the Achieva transferred to the Explorer XLT, and Dennison paid off an $884.09 personal loan of Mr. Logsdon's that was secured by the Achieva.  At that point, the Logsdon's had effectively accepted and used the credit extended by CitiFinancial.

In late July 2005, the Logsdon's began to shop for another automobile at Leman's Chevy City.  They selected and agreed to purchase a 2005 Pontiac Bonneville.  The purchase of the Bonneville was finalized on August 3, 2005, and at that time, a Leman's employee returned the Explorer XLT to Dennison at Mr. Logsdon's request.  At that time, the Logsdons had had the Explorer XLT for 13 days and Dennison asserts that they had driven it for 1,206 miles during that time.

Meanwhile, on August 1, 2005, CitiFinancial requested clarification on several items of information on the Logsdons' credit application, most of which were easily resolved.  The one item remaining was the proper calculation of their $200 down payment on the face of the RISC.  CitiFinancial asked Dennison to obtain Mr. Logsdon's initials on a change showing the $200 down payment correctly on the current RISC or alternatively, that a new RISC be prepared for his signature.  Mr. Logsdon refused to do either, despite the fact that he understood that financing had been obtained for the purchase of the Explorer XLT.  The

Logsdons made no payments on the Explorer XLT, and Dennison concluded that the Logsdons had abandoned the vehicle.

On August 23, 2005, the Logsdons filed this lawsuit, alleging that Dennison: (1) violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691, by not providing Mr. Logsdon with a statement of reasons for the denial of credit and providing him with a false notice of approval; (2) violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, by failing to provide him with the information required by 15 U.S.C. § 1681m(a)(2) and (a)(3); (3) wrongfully converted his Oldsmobile Achieva; and (4) violated the Illinois Consumer Fraud Act, 815 ILCS 505/1, et seq. The parties have now filed cross motions for summary judgment. The motions are fully briefed, and this Order follows.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  Celotex, 477 U.S. at 324.  Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]."  Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989).  Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

I.      Equal Credit Opportunity Act ("ECOA") Claims

As originally enacted, the purpose of the ECOA was to prohibit discrimination in credit transactions.  Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 975 (7th Cir. 2004).  It was subsequently amended to require "creditors" to provide written notice of specific reasons why an adverse action was taken against a consumer applying for credit.  Id.; 15 U.S.C. 1681(d)(2).  To be liable under the statute, a defendant must be a "creditor" and must also have taken an adverse action against the plaintiff.  Treadway, 362 F.3d at 975.

Dennison argues that it cannot be liable under the ECOA because it is not a "creditor" under the statute.  A "creditor"is defined for the purposes of the ECOA as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original

- 4 -

creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. §

1691a(e). The implementing regulations further elaborate on the definition of "creditor."

> Creditor means a person who, in the ordinary course of
> business, regularly participates in a credit decision, including
> setting the terms fo the credit.  The term creditor also includes
> a creditor's assignee, transferee, or subrogee who so
> participates.  For purposes of § 202.4(a) and (b), the term
> creditor also includes a person who, in the ordinary course of
> business, regularly refers applicants or prospective applicants
> to creditors, or selects or offers to select creditors to who
> requests for credit may be made . . .

12 C.F.R. § 202(l).  "Credit" is, in turn, defined by the ECOA as "the right granted by a

creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to

purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

Interestingly, both parties cite <u>Treadway</u> in support of their positions.  However, the

Logsdon's reliance is misplaced.  While the car dealership at issue in <u>Treadway</u> was found

to be a creditor, it was found to be a creditor based on factual circumstances that are

readily distinguishable from this case.  The Logsdons argue that Dennison is a "creditor"

because it regularly refers applicants to lenders.  However, <u>Treadway</u> clearly held that such

a dealership is only a creditor for purposes of 12 C.F.R. § 202.4(a) (discrimination) and (b)

(discouragement), neither of which are applicable here.  <u>Treadway</u>, 362 F.3d at 979.

The Logsdons next contend that Dennison is a creditor because it regularly

participates in credit decisions by reviewing credit reports and deciding to which assignees

to send their retail installment contracts.  However, this type of argument was addressed

by the Federal Reserve Board (the agency charged with implementing the ECOA) in its

comments to 12 C.F.R. § 202.2(l):

> The Board recognizes that in the credit application process
> persons may play a variety of roles, from accepting

applications through extending or denying credit.  Comment 2(I)-2 is intended to clarify that where the only role a person plays is *accepting and referring applications for credit, or selecting creditors to whom applications will be made*, the person meets the definition of creditor, but only for purposes of the prohibitions against discrimination and discouragement. . . . Where the automobile dealer only accepts applications for credit and refers those applications to another creditor who makes the credit decision – for example, where the dealer does not participate in setting the terms of the credit or making the credit decision – the dealer is subject only to §§ 202.4(a) and (b) for purposes of compliance with Regulation B.

Treadway, 362 F.3d at 979-80, *citing* 64 Fed. Reg. at 13155 (noting that the actions of the dealership held to be a "creditor" in that case "are distinguishable from the common scenario in which an automobile dealership decides to send a credit application to a limited number of the many lenders with which it works.  The Federal Reserve Board has clearly indicated that merely 'selecting creditors to whom applications will be made' does not make one a 'creditor' for purposes of the notice requirements of the ECOA.") Thus, this argument is also unavailing.

Finally, the Logsdons contend that Dennison was a "creditor" because of general labels and language in the RISC referring to a sale "for the deferred payment price and on the terms set forth in this contract."  In support of this contention, they rely on Nevarez v. O'Connor Chevrolet, Inc., 303 F.Supp.2d 927, 939-40 (N.D.Ill. 2004), for the proposition that the language "for a deferred payment price" is indicative of the dealership being a "creditor."  However, in that case, a third party creditor had not yet been obtained to finance the sale at the time the contract was signed.  Such is not the situation here, as it is clear that CitiFinancial had issued approval for the transaction prior to the signing of the RISC. In fact, it is undisputed that CitiFinancial was specifically identified as providing financing in the RISC at the time it was signed.

- 6 -

As the record is devoid of evidence indicating that Dennison participated in the credit decision in this case by setting the terms of the sale, and the Logsdons' other theories have been rejected as a matter of law, the Court must conclude that on the record in this case, no reasonable factfinder could conclude that Dennison is a "creditor" for purpose of the notice provisions of the ECOA.[1]  Dennison is therefore entitled to summary judgment in its favor on Counts I and V of the Amended Complaint, and the Logsdon's corresponding Motion for Partial Summary Judgment on the ECOA Counts is denied.

II.    Fair Credit Reporting Act ("FCRA") Claims

The FCRA was enacted in 1970 to address abuses in the consumer reporting industry and to insure that agencies report accurate information.  Treadway, 362 F.3d at 981-82.  The FCRA's notice requirements are similar to those in the ECOA.  Id., at 982. Section 1681m(a) of the FCRA provides:

> [I]f any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall provide oral, written, or electronic notice of the adverse action to consumer.

---

[1] Alternatively, the Court would note that Dennison took no adverse action against the Logsdons within the meaning of the ECOA.  Under the ECOA, an "adverse action" is defined as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."  15 U.S.C. § 1691(d)(6).  As there is nothing in the record indicating that Dennison denied, revoked, refused to grant credit, or changed the terms of an existing credit arrangement in this case, the Court can find no adverse action.  Rather, the record indicates that Dennison forwarded the Logsdons' credit application to various lenders, who then made their own decisions to either extend or decline the credit requested.  The record would also support a finding that CitiFinancial actually extended a conditional offer of credit that the Logsdons accepted by signing the RISC, making the required down payment, delivering their trade-in vehicle, and accepting delivery of the Explorer XLT.

15 U.S.C. § 1681m(a).  An adverse action is then defined as "an action or determination that is – (I) made in connection with an application that was made by, or a transaction that was initiated by, any consumer . . . and (II) [is] adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv).

The Logsdons concede that the resolution of their FCRA claim is dependent on the resolution of the ECOA claim.  The Court agrees.  As the Court previously found that Dennison was not a creditor and took no adverse action against them, their FCRA claim would necessarily fail as well.  The record reveals that Dennison's conduct fails to rise to the level of an adverse action even under the broader reach of the FCRA, as there is no evidence promoting the reasonable inference that Dennison denied the Logsdons credit or made any decisions at all with respect to their credit.

III.   Conversion

The Logsdons allege that Dennison stole their car (i.e., their Oldsmobile Achieva). In order to state a claim for conversion under Illinois law, a plaintiff must prove:  In order to state such a claim under Illinois law, a plaintiff must allege "(1) an unauthorized and wrongful assumption for control, dominion, or ownership by a defendant over a plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." Fonda v. General Casualty Co. of Ill., 279 Ill.App.3d 894, 899, 216 Ill.Dec. 379, 665 N.E.2d 439, 442 (1st Dist.1996), *citing* Gen. Motors Corp. v. Douglass, 206 Ill.App.3d 881, 886, 151 Ill.Dec. 822, 565 N.E.2d 93 (1st Dist.1990); Cirrincione v. Johnson, 184 Ill.2d 109, 114 (Ill. 1998).

Here, the Achieva was delivered to Dennison as a trade-in on the purchase of the Explorer XLT, and the Logsdons received a $1,200.00 trade-in allowance for it.  Logsdon transferred the license plates from the Achieva to the Explorer XLT, indicating that the Achieva had been "sold."  Furthermore, Dennison paid off an $884.09  personal loan that Mr. Logsdon had secured with the Achieva, resulting in the Logsdon's receipt of $2,084.09 in exchange for their Achieva.

The Logsdons concede that Dennison's initial possession of their trade-in was lawful, but then go on to argue that once Dennison "terminated" the finance contract, it had no right to keep their car.  However, this two paragraph argument is utterly devoid of any citation to legal authority, other legal or factual support, or any attempt to demonstrate how Dennison's conduct establishes a prima facie case of conversion.  To the contrary, the record indicates that it was CitiFinancial that had extended and was in control of the financing, not Dennison.

This kind of perfunctory and undeveloped legal argument is utterly insufficient to survive a motion for summary judgment, and it is well-settled that responses of this type result in the waiver of the arguments.  *See*, Finance Investment Co. v. Geberit AG, 165 F.3d 526, 1998 WL 890372, at *1 (7th Cir. Dec. 23, 1998) (finding a perfunctory and undeveloped argument to be waived); Volovsek v. Wisconsin Department of Agriculture, Trade and Consumer Protection, 344 F.3d 680, 689 n.6 (7th Cir. 2003); Indurante v. Local 705, International Brotherhood of Teamsters, 160 F.3d 364, 366 (7th Cir. 1998); Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 668 (7th Cir. 1998), cert. den., 119 S.Ct. 890 (1999). Accordingly, the Court finds that the Logsdons have waived their argument with respect to

their conversion claim by virtue of their perfunctory and legally undeveloped response.

Dennison is therefore entitled to judgment as a matter of law on this claim.

IV.    Illinois Consumer Fraud Act ("ICFA")

The Logsdons next allege that Dennison violated the ICFA by refusing to return their

down payment and trade-in vehicle.  Under § 2 of the ICFA:

> If the furnishing of merchandise, whether under purchase order
> or a contract of sale, is conditioned on the consumer's
> providing credit references or having a credit rating acceptable
> to the seller and the seller rejects the credit application of that
> consumer, the seller must return to the consumer any down
> payment, whether such down payment is in the form of money,
> goods, chattels or otherwise made under that purchase order
> or contract and may not retain any part thereof.  The retention
> by the seller of part or all of the down payment whether such
> down payment is in the form of money, goods, chattels or
> otherwise, under those circumstances as a fee for investigating
> the credit of the consumer or as liquidated damages to cover
> depreciation of the merchandise which was the subject of the
> purchase order or contract or for any other purpose is an
> unlawful practice within the meaning of this Act, whether that
> fee or those charges are claimed from the down payment,
> whether such down payment is in the form of money, goods,
> chattels or otherwise, or made as a separate charge to the
> consumer.

815 ILCS § 505/2C.

Dennison responds that the sale of the Explorer XLT was not conditioned on

providing credit references or an acceptable credit rating because Dennison was not the

creditor, and it did not reject the Logsdon's credit application.  To the contrary, an offer of

financing was obtained from CitiFinancial, and the Logsdons effectively accepted that offer

when they made the downpayment, surrendered their trade-in, signed the RISC, and took

possession of the Explorer XLT.  Moreover, Dennison argues that the retention of the down

payment is not an unlawful practice because it did not occur "under those circumstances" as set forth in the ICFA.

The Logsdons make no real effort to respond to Dennison's argument, again responding solely with a two paragraph argument that is devoid of citation to any legal authority and makes no attempt to demonstrate how Dennison allegedly violated the ICFA. As set forth in the previous section of this Order, it is well-settled that perfunctory and undeveloped arguments of this nature result in the waiver of the arguments. <u>Finance Investment Co.</u>, 165 F.3d 526, 1998 WL 890372, at *1; <u>Volovsek</u>, 344 F.3d at 689 n.6; <u>Indurante</u>, 160 F.3d at 366; <u>Kauthar SDN BHD</u>, 149 F.3d at 668.  Accordingly, the Logsdons have waived their argument with respect to the ICFA claim as well, and Dennison is entitled to judgment as a matter of law.

## CONCLUSION

The Court is quite frankly perplexed by the factual scenario in this case, which appears to be a situation where the Plaintiffs effectively purchased two cars within a relatively short period of time and then tried to act as if the first purchase had never occurred or resulted in no legal consequences for them.  Their attempt to dismiss the first transaction as simply a denial of financing barely passes the red face test and borders on sanctionable.

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment [#48] is DENIED, and Defendant's Motion for Summary Judgment [#51] is GRANTED.  As a result of these rulings, Defendant's Motion to Dismiss [#64] is DENIED AS MOOT, and Plaintiffs' Motion to Add Claim [#65] is also DENIED as it would be an exercise in futility given the

rulings in this Order.  All existing deadlines or hearings are vacated, and this matter is now terminated.

ENTERED this 7th day of June, 2007.


Michael M. Mihm
Michael M. Mihm
United States District Judge